FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 09, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CALOB R.,[1] | No.  4:25-cv-5001-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Calob R. asks the Court to reverse the Administrative Law Judge's (ALJ) decision to terminate Title 16 disability benefits

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

DISPOSITIVE ORDER - 1

after Plaintiff attained the age of 18. In response, the Commissioner

argues that the ALJ's decision should be affirmed because Plaintiff

fails to show the ALJ harmfully erred when evaluating the medical

opinions and Plaintiff's reported symptoms. Because the ALJ's

evaluation of the psychological consultative examining opinion is not

supported by substantial evidence, this matter is remanded for further

proceedings.

## I.    Disability Standard and Standard of Review

After a child has been found to be entitled to disability benefits,

the Commissioner is required to redetermine whether the claimant

continues to be entitled to benefits once they reach the age of 18.[3] This

redetermination assessment requires the ALJ to evaluate whether the

now adult claimant's impairment(s) are "of such severity that he is not

only unable to do his previous work[,] but cannot, considering his age,

education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."[4] Per 20

---

[3] 20 C.F.R. § 416.987.

[4] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920.

C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether the claimant is disabled.

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[5] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6]

––––––––––––––––––––

[5] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[6] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that

## II.    Background

Born in 2006, Plaintiff qualified for disability as a child and received supplemental security income benefits under Title 16.[7] Since preschool, Plaintiff was placed in special education classes.[8] Cognitive testing performed when he was 11 indicated "very low skills across the board."[9] Consistent with the test results, at the age of 13, his math ability was estimated at the 2.5 grade equivalent, his reading at about 3.0 grade equivalent.[10] In addition to his cognitive struggles at school, Plaintiff had behavioral issues that worsened in the 8th grade, requiring a behavioral intervention plan (BIP) to be implemented in

_____

detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[7] AR 291, 75–82.

[8] AR 582.

[9] AR 538.

[10] AR 506–08.

2017.[11] Due to some progress in his behavior, the BIP was discontinued in 2020; however, Plaintiff remained under an Individualized Education Plan (IEP).[12] Yet, his attendance worsened and it was noted he was coming to school only for social time or food.[13]

In July 2021, he had a psychological diagnostic interview with Kathryn Johnson, PhD, at the request of the Division of Disability Determination Services.[14] Dr. Johnson opined that Plaintiff was unable to manage complex tasks, would require significantly more training and supervision than a typical employee, and may demonstrate poor behavioral control, amongst other limitations.

Two weeks after Dr. Johnson's evaluation, Michael Regets, PhD, reviewed the record for a Disability Determination Explanation to determine whether Plaintiff's disability should be ceased or continued upon attaining the age of 18. Dr. Regets determined that disability

---

[11] AR 456.

[12] AR 502–55.

[13] AR 511, 525.

[14] AR 582–86.

ceased because Plaintiff could do simple routine tasks and maintain attendance and concentration, persistence, and pace for required 2-hour intervals, and complete a normal workweek within normal tolerances.[15]

At some point after his evaluation with Dr. Johnson, Plaintiff dropped out of high school as a twice "super senior," and has not yet obtained a GED.[16] In February 2022, Matthew Comrie, PsyD, reviewed the same records as Dr. Regets and agreed largely with Dr. Regets' opinion except Dr. Comrie further limited Plaintiff to "jobs that do not involve direct contact with the general public," instead of merely occasional interaction with the public.[17]

The Social Security Administration (SSA) adopted the opinions of Dr. Regets and issued a decision on September 28, 2022, finding that Plaintiff was no longer eligible for disability payments.[18] Plaintiff

---

[15] AR 94–109.

[16] AR 49.

[17] AR 110–16.

[18] AR 197–201.

requested a hearing before an ALJ, and ALJ Stewart Stallings held a telephone hearing in November 2023, during which Plaintiff and a vocational expert testified.[19]

Consistent with the earning statements of record, Plaintiff testified about several past short-term part-time jobs, along with a more recent full-time job at a potato processing plant that he began about 1½ months prior.[20] He discussed that training took about six months as there were several different positions at the plant for which he would be trained. He stated that it took him two times to pass the requirements for the packing-line position, and that he was not confident he would be able to pass the test for the potato-receiving position without extra supervision.[21] He also testified that he held a part-time, events-based job where he set up the stage or a hockey rink,

---

[19] AR 202–03.

[20] AR 47–52, 298, 307.

[21] AR 54–55.

along with a small crew, and that sometimes he would tell newer crew members how to do a task.[22]

He stated he has a young daughter, who lives with her mother, and he no longer sees his daughter often.[23] He lives with his aunt, where he does his own laundry and helps clean up after himself, and he goes to the convenience store.[24] He does not drive a car nor does he have a license, as he failed the written test.[25] He stated that he stopped taking his ADHD medication because the medication made him feel dizzy and lose focus.[26] He reported struggling with anxiety and falling/staying asleep.[27]

---

[22] AR 55.

[23] AR 50.

[24] AR 50, 56–57.

[25] AR 57.

[26] AR 57.

[27] AR 58.

After the hearing, the ALJ issued a decision denying benefits.[28] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with" the medical evidence and other evidence.[29] As to the medical opinions, the ALJ found:

- the reviewing Disability Determination Services psychological opinions by state agency consultant Dr. Regets persuasive.

- the reviewing Disability Determination Services psychological opinions by state agency consultant Dr. Comrie somewhat persuasive.

- the opinions by Dr. Johnson from her consultative examination not persuasive.[30]

As to the sequential disability analysis, the ALJ found:

---

[28] AR 15–34.

[29] AR 24–25. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[30] AR 25–27.

- Step one: Plaintiff attained age 18 on December 22, 2019, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18; however, Plaintiff was later notified that he was found no longer disabled as of September 28, 2022, based on a redetermination of disability under the rules for adults who file new applications.

- Step two: Plaintiff had the following medically determinable severe impairments: autism spectrum disorder, ADHD, and borderline intellectual functioning.

- Step three: since September 28, 2022, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

  The claimant is limited to simple, routine, and repetitive tasks (at reasoning level 1 or 2); is able to maintain sufficient attention and concentration for extended periods in 2-hour segments in a normal workday; is

limited to no more than occasional and brief interaction with the public and co-workers, occasional interactions with supervisors, which may increase during training cycles.

- Step four: Plaintiff could perform past relevant work as a production helper.

- Alternatively at step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as automobile detailer, hand packager, and laundry worker II.[31]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[32]

### III.   Analysis

Plaintiff argues the ALJ reversibly erred when assessing the medical opinions and Plaintiff's symptom reports. The Commissioner disagrees that any reversible error occurred. As is explained below,

---

[31] AR 18–29.

[32] AR 1–6; ECF No. 1.

although the ALJ applied the correct legal standard when evaluating the medical opinions, his reasons for finding Dr. Johnson's opinion not persuasive are not supported by substantial evidence. This error impacted the ALJ's disability analysis. Remand for a new disability evaluation is required.

## A.   Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by not applying the correct regulation when evaluating the medical opinions and, furthermore, regardless of which regulation applied, the ALJ's evaluation is not supported by substantial evidence. The Commissioner disagrees with both arguments.

### 1.   Standard that applies

Which regulation applies to the ALJ's evaluation of the medical opinions depends on whether the disability application was "filed" before or on/after March 27, 2017, the date newer regulations took effect.[33] For child-to-adult disability redetermination actions, the

---

[33] *Compare* 20 C.F.R. § 416.927 *with id.* § 416.920c.

1  parties disagree as to whether an application is "filed" the date the

2  childhood disability application was filed or the date the claimant

3  attains age 18.

4      To support his argument that it is the later date, i.e., when the

5  claimant attains age 18, the Commissioner relies on Program

6  Operations Manual System (POMS) HA 01530.030, which states:

7      The filing date of an age 18 redetermination is the date the
       individual attains age 18, which is one day before the
8      calendar date of their 18th birthday. If the claimant attains
       age 18 before March 27, 2017 (i.e., the claimant's date of
9      birth is before March 28, 1999), the prior rules apply, and if
       the claimant attains age 18 on or after March 27, 2017, (i.e.,
10     the claimant's date of birth is on or after March 28, 1999),
       the current rules apply.[34]

11

12 Plaintiff argues that this non-binding POMS language should not be

13 followed because it directly conflicts with the regulations implemented

14 in 2017 and, therefore, instead of considering the filing date to be the

15 day before his 18th birthday, the filing date should be when his

16 childhood disability application was filed in April 2006, well before the

17 newer regulations in 2017. To support his argument, Plaintiff relies on

18 _____

19 [34] POMS HA 01530.030-IV.B.n1 (previously HALLEX I-5-3-30).

20 C.F.R. § 416.927, which states, "For claims filed (see § 416.325) before March 27, 2017, the [new] rules in this section apply." In turn, § 416.325(a) states:

> General rule. We consider an application for SSI benefits filed on the day it is received by an employee at any social security office, by someone at another Federal or State office designated to receive applications for us, or by a person we have authorized to receive applications for us.[35]

Plaintiff emphasizes that his application for SSI benefits was filed when he was a child in April 2006 because that is when the SSA received his application and therefore the former medical-opinion-evaluation regulations should apply.

Plaintiff's argument, however, overlooks 20 C.F.R. § 416.987, which is the regulation that applies to "disability redeterminations for individuals who attain age 18." Section 416.987(b) states in part:

(b) *What are the rules for age-18 redeterminations?* When we redetermine your eligibility, we will use the rules for adults (individuals age 18 or older) who file new applications explained in

---

[35] 20 C.F.R. § 416.325.

§ 416.920(c) through (h)."[36] Thus, per § 416.987(b), the now-adult claimant is considered to have effectively filed a new application for benefits when turning 18. The SSA has a responsibility to redetermine eligibility as the child recipient turns 18 and is to treat this as a new application.

Accordingly, after examining the text and context of these regulations, HA 01530.030-IV.B.n1's rule that the filing date of an age 18 redetermination is the date the individual attains age 18 is a reasonable interpretation of the regulations and the redetermination process.[37] Therefore, because Plaintiff turned 18 after March 27, 2017, the ALJ properly applied the newer regulations when evaluating the medical opinions.

---

[36] *Id.* § 416.987(b).

[37] *See Larson v. Saul*, 967 F.3d 914, 922 (9th Cir. 2020) (requiring the court to "independently examine the text and context of the statute" to determine if the agency's interpretation is inconsistent with the wording of the regulations or the statute under which the regulations were promulgated).

Per the new regulations, the ALJ was to consider and articulate how persuasive he found each medical opinion, including whether the medical opinion was consistent with and supported by the record.[38] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[39] Supportability and consistency are the most important factors,[40] and the regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the

---

[38] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[39] 20 C.F.R. § 416.920c(c)(1)–(5).

[40] *Id.* § 416.920c(b)(2).

1

2

claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[41]

The ALJ may, but is not required to, explain how the other listed

3

factors were considered.[42]

4

5

    The Court is constrained to the reasons and supporting

explanation offered by the ALJ when evaluating the medical opinions

6

of Dr. Johnson, Dr. Comrie, and Dr. Regets.[43]

7

    2.    Dr. Johnson

8

9

    In July 2021, Dr. Johnson conducted a psychological diagnostic

interview of Plaintiff when he was 19 at the request of the Division of

10

Disability Determination Services.[44] Dr. Johnson reviewed Plaintiff's

11

December 2020 Secondary Transition Plan, which was part of his

12

13

14

15

_____

16

[41] *Id.* § 416.920c(c)(1)–(2).

17

[42] *Id.* § 416.920c(b)(2).

18

[43] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

19

[44] AR 582–85.

Individualized Education Program (IEP). Plaintiff's mother was present for the evaluation.[45]

During the evaluation, Plaintiff told Dr. Johnson that he had been employed by a solar panel company for 3 weeks and was still in training.[46] Dr. Johnson observed Plaintiff as cooperative during the examination but noted he did not develop much rapport with her, seemed disinterested, had a limited range of affect during the examination, and responded to some questions somewhat flippantly.[47] While his content of thought, stream of mental activity, memory, and orientation were largely intact, Plaintiff demonstrated a limited fund of general knowledge, and his insight and judgment were limited. Dr. Johnson found Plaintiff's ability to concentrate was adequate for the purposes of the evaluation but that he performed below average on screening measures of attention and mental control, which was consistent with Plaintiff's reported significant difficulty with attention

---

[45] AR 582.

[46] AR 583.

[47] AR 584.

and concentration in daily life. Dr. Johnson's diagnostic impression was autism spectrum disorder, ADHD (combined type), and intellectual disability. She opined that Plaintiff "will likely be able to develop some independent living skills over time. He will require substantial support for the foreseeable future, however."[48] In addition, Dr. Johnson opined that Plaintiff:

> should be able to understand and follow basic instructions when appropriately motivated, though he would be unable to manage more complex tasks. His intellectual and learning capacities are limited, and he would require significantly more training and supervision than the typical employee. He is best suited for hands-on learning. The claimant would be unable to initiate or plan activities in the workplace. He may demonstrate poor behavioral control and interactions with coworkers may be impaired. He would not ask for help when needed. Records indicate significant problems with attendance in school, though he has apparently been showing up for work regularly over the past 3 weeks. His poor sleep patterns will likely impact work performance to some degree.[49]

The ALJ found Dr. Johnson's opinion "generally not persuasive" because it was 1) inconsistent with Plaintiff's hearing testimony that

---

[48] AR 585.

[49] AR 585–86.

he enjoyed working with most co-workers and therefore his interpersonal issues were isolated or resolved; 2) inconsistent with school records indicating that Plaintiff could ask for help and his behavior markedly improved with time; and 3) supported by stale information, i.e., three-year-old clinical observations, that conflicted with Plaintiff's demonstrated abilities in the workplace.[50]

### a.    *Work*

A key focus of the ALJ's evaluation was that Plaintiff was working and that his work, particularly his part-time work at the Toyota Center where he helped take down and put up sets/displays, reflected that he could ask for help when needed, train other employees, and resolve interpersonal conflicts with coworkers. The ALJ found these abilities inconsistent with Dr. Johnson's opinion that Plaintiff would demonstrate poor behavioral control, that his interactions with coworkers would be impaired, and that he was unable to ask for help.

---

[50] AR 26–27.

While at first glance, this hands-on work seems inconsistent with Dr. Johnson's opined limitations, the ALJ failed to fairly consider the fact that this work was part-time. Plaintiff was not required to control his behavior and interact well with co-workers for 40 hours a week, and he did not have to maintain daily attendance. The ALJ failed to meaningfully explain why this part-time work reflected abilities that were inconsistent with Dr. Johnson's opinion that Plaintiff may demonstrate poor emotional control and an inability to interact with coworkers when working full time.

The ALJ also highlighted that Plaintiff had also recently—about 1½ months before the hearing—obtained full-time employment at a potato processing plant. As Plaintiff testified, he was still in training, and would be for another 4½ months.[51] At the hearing, in response to a question as to whether he has had any problems with a work task he was being trained on he said, "No. Not from where – not from where I'm aware," but he later acknowledged that "I feel like I would not be confident to be by myself out there. I need someone there to make sure

---

[51] AR 49–52.

I'm doing a good job" and he shared that he had messed up with the tractor multiple times.[52] Then in response to later questioning Plaintiff shared that during the training for a specific position, i.e., the potato sorting line, he failed the training the first time but then he qualified the second time.[53] Thus, although Plaintiff had worked full-time for 1½ months, his performance during training was consistent with Dr. Johnson's concern that Plaintiff would "require significantly more training and supervision than the typical employee."[54]

Moreover, there is concern about Plaintiff's ability to self-assess his work performance and his interactions with others. For instance, Dr. Johnson found that Plaintiff "voiced limited insight into his condition" and that his "judgment was generally impaired based on conversation throughout the examination."[55] Consistent with Dr. Johnson's findings, Plaintiff's comments about his work

---

[52] AR 51, 54.

[53] AR 55.

[54] AR 586.

[55] AR 585.

performance at the hearing reflect that he may have difficulty being aware of whether he has had "any problems" at work as the ALJ asked. In response to that question, Plaintiff answered no, but other testimony reflects that he failed a portion of the training on the first attempt and that he was unlikely to feel comfortable performing an aspect of the job he was being trained on without extra training/supervision.[56] Plus, his other work records show prior short-term employment, with Plaintiff testifying that he had worked at AutoZone for only a month because he felt that he was untrained and was being yelled at.[57] In addition, the Disability Hearing Officer noted that Plaintiff sat stiffly, had fleeting eye contact, and "responded to all questions but on occasion did not understand a question, at which point his [significant other] would jump in and explain it (this only happened twice, though it is notable that he did not ask for

---

[56] AR 51–58.

[57] AR 59, 133.

1  clarification, he just sat silently until his [significant other] explained

2  it)."[58]

3      In summary, the ALJ's finding that each of Dr. Johnson's opined

4  limitations were inconsistent with Plaintiff's ability to work part-time

5  at the Toyota Center, as well as inconsistent with his full-time work for

6  1½ months for which he was still in training, is not supported by

7  substantial evidence.

8          b.    _School records_

9      The ALJ also discounted Dr. Johnson's opined limitations because

10  they were inconsistent with Plaintiff's school records indicating that he

11  had no problems asking for help and that showed marked improvement

12  in his behavior.[59] The record the ALJ cited is part of a May 2020 school

13  Evaluation Report.[60] Under the meeting discussion section of the

14  report, it states:

15      Except for in PE, [Plaintiff] isn't pushing people's buttons or
        defying rules like he used to. In PE, he comes late, won't
16

17  [58] AR 128.

18  [59] AR 27.

19  [60] AR 523.

1
2
3
4
5
6
7

> dress down, and wants to play instead of work. He wants to do his own thing and when denied, he tends to destroy the atmosphere, [Plaintiff's] attendance is really poor this year especially. He really only comes to school for food and social time. He does work for some academic classes, but historically not for teachers who show any weakness. He needs confident, dominant teachers. If he senses that a teacher is insecure about running the class, he will take advantage of that and push the rules. [Plaintiff] really needs resource room for all academic course. Now that [Plaintiff] is behaving better than in the past, his need for a [Behavioral Intervention Plan] is no longer and was discontinued at the last IEP. [Plaintiff] is not graduating this year. He has too many failed courses under his belt.[61]

8

9
10
11
12
13
14
15
16

Notwithstanding the more recent behavioral improvement, Plaintiff still defied his physical education teacher's rules, would take advantage of a teacher's insecurities, was not on track to graduate high school (and in fact did not), and needed resource room assistance for all academic classes.[62] Although he was no longer "pushing buttons or defying rules" in each of his classes, this improvement must be considered against the very extreme behavioral issues Plaintiff had previously exhibited in the 9th grade:

17

---

18

[61] AR 525.

19

[62] AR 523–27.

[Plaintiff] has many more social skill, problem behavior, and executive function difficulties at this time than were previously documented in his older special education evaluations. According to the BASC-3 and SSIS, [Plaintiff] experiences many externalizing problems in addition to school problems. He demonstrates hyperactivity, aggression, conduct disorder, attention problems, and learning problems.[63]

Moreover, following the May 2020 Evaluation Report, the December 2020 IEP's Secondary Transition Plan was prepared for Plaintiff's "super senior" 5th year stating that Plaintiff has "limited academic, social, and executive function behavioral skills. He requires a high level of resource room support at school to benefit and make progress. He qualifies for services in reading, written language, math, social, and executive functioning (behavior)."[64] This IEP plan also states under "Needs": "Additional needs that would leak into the workplace or social interactions are following rules, active listening, asking for help, and self-control."[65] The IEP again mentions:

---

[63] AR 524.

[64] AR 502.

[65] AR 503.

1
2
3
4

> Among the categories, Greeting and Conversation was
> [Plaintiff's] biggest strength at 2.25 of four. Personal space
> and voice/tone/rate were a 2.0 of four. Needs that would leak
> into the workplace or social interaction are following rules
> (1.5 of 4), Actively listening (1.75 of 4), and self-control (1.75
> of 4). Following rules and asking for help were two of last
> year[']s focuses. He did not make progress due to attendance
> [problems]. His goal will continue.[66]

5
6
7

These school records, which reflect a pattern of behavioral and

academic challenges, are consistent with, rather than inconsistent

with, Dr. Johnson's opined limitations.

8

       *c.*    *Timeliness of information*

9
10

      Finally, the ALJ's finding that Dr. Johnson's opinions were

supported merely by stale information, i.e., her July 2021 examination,

11
12

is not a legitimate reason supported by substantial evidence. It is

accurate that Dr. Johnson's opinions were based on an evaluation that

13
14

occurred three years before the ALJ's decision. However, the ALJ did

not likewise find Dr. Regets' reviewing opinion, which was authored

15
16

only two weeks after Dr. Johnson's evaluation, unsupported by stale

information but instead the ALJ conclusory found that Dr. Regets'

17
18
19

---

[66] AR 509.

opinion was persuasively "supported by narrative explanation."[67] Yet, the form on which Dr. Regets' opinion was issued summarizes only one other document besides Dr. Johnson's report and the December 2020 IEP that Dr. Johnson also reviewed—a October 27, 2020 note from an 18-year well-child examination.[68] The ALJ fails to explain how Dr. Regets' conclusory opinions—some listed below—are supported by a "narrative explanation":

- "Claimant does have limitations, but all productive work not precluded. Statements made by claimant regarding severity not supported or consistent with the objective medical evidence of record."[69]

- "The claimant retains the capacity to carry out simple routine tasks, maintain [concentration, persistence, and pace] for up to 2 hours continuously, maintain adequate attendance, and complete a normal workday/workweek within normal

---

[67] AR 26.

[68] AR 99 (summarizing AR 484-85).

[69] AR 102.

tolerances. However, the claimant would not be able to carry out tasks that are detailed [sic] than this on a consistent and regular basis."[70]

These conclusory statements do not serve as substantial evidence supporting the ALJ's finding that Dr. Regets' opinion is supported by a more robust "narrative explanation" than Dr. Johnson's opinion.

Likewise, the ALJ's finding that Dr. Comrie's similarly sparse opinion was "supported by a narrative explanation" is not supported by substantial evidence.[71]

It was not legitimate for the ALJ to find Dr. Regets' and Dr. Comrie's opinions supported but find Dr. Johnson's opinion not supported by timely information.[72]

Moreover, if the ALJ found Dr. Johnson's examination results stale, the ALJ should have ordered a new and updated consultative

---

[70] AR 105.

[71] AR 26.

[72] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).

examination.[73] "The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[74] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[75]

    3.   <u>Summary</u>

    The ALJ erred when evaluating Dr. Johnson's opinions. This error was consequential because Plaintiff would not be able to sustain full-time work if he needs additional supervision to stay on task or if he is absent more than one workday per month. The ALJ's errors when evaluating Dr. Johnson's opinions likewise consequentially impacted the ALJ's analysis of Dr. Regets' and Dr. Comrie's opinions. Remand is necessary.

---

[73] *See* 20 C.F.R. §§ 416.912(b)(2), 416.919.

[74] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[75] *Id.* at 1184.

**B.    Other Arguments**

Because the ALJ's errors when evaluating the medical evidence impacted his sequential analysis, the Court does not analyze Plaintiff's remaining claims, but the Court provides the following guidance.

On remand, the ALJ is to consider that Plaintiff's care for his young daughter included him watching YouTube and playing basketball when she was in his care, and that by November 2023, Plaintiff was no longer with the mother of the child and as a result he no longer had a relationship with his daughter.[76]

In addition, when assessing Plaintiff's lack of mental-health treatment, the ALJ must consider whether Plaintiff's mental-health impairments impact his ability to make reasoned decisions about the need for mental-health treatment.

**C.    Remand: further proceedings are needed.**

Plaintiff seeks a remand for payment of benefits. However, the Court finds further development is necessary for a proper disability determination. Another consultative psychological examination is to be

---

[76] AR 186, 50.

held,[77] along with supplementing the record with recent treatment records.[78]

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

---

[77] The consultative examiner is to be a copy of Dr. Johnson's report, the May 2020 school evaluation, the December 2020 IEP, and any pertinent recent mental-health treatment records. 20 C.F.R. § 416.917; POMS DI 22510.017(B).

[78] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

2.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 9th day of July 2025.

_____
EDWARD F. SHEA
Senior United States District Judge